STATE v. HAIRE

[96 N.C. App. 209 (1989)]

---

STATE OF NORTH CAROLINA v. JOHN ALVIN HAIRE

No. 8926SC266

(Filed 7 November 1989)

**Larceny § 7.2 (NCI3d) — felonious larceny of tools — evidence of value sufficient**

The trial court in a felonious larceny prosecution did not err in failing to submit to the jury the lesser included offense of misdemeanor larceny where the owner of the stolen tools, after being instructed as to the meaning of fair market value, gave unequivocal testimony that his tools were valued between $885 and $1,030, and the basis for his testimony was not the purchase price or replacement cost of the stolen items, but was instead his knowledge of prices paid for used tools in the construction industry.

**Am Jur 2d, Larceny §§ 45, 46.**

APPEAL by defendant from *Lamm (Charles C., Jr.), Judge.* Judgment entered at the 12 September 1988 session of Criminal Superior Court, MECKLENBURG County. Heard in the Court of Appeals 10 October 1989.

On 15 September 1988, a jury returned verdicts of guilty against the defendant for breaking and entering a motor vehicle and felonious larceny. The Honorable Charles C. Lamm, Superior Court Judge presiding, imposed a sentence of ten years imprisonment on the charge of felonious larceny and a consecutive three year sentence

STATE v. HAIRE

[96 N.C. App. 209 (1989)]

on the charge of breaking and entering a motor vehicle. Defendant entered notice of appeal only as to the larceny conviction on 20 September 1988.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Jo Anne Sanford, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Marc D. Towler, for defendant-appellant.*

LEWIS, Judge.

Defendant first argues that the trial court erred in failing to submit to the jury the lesser included offense of misdemeanor larceny. He asserts that the jury should have been allowed to consider whether the items stolen had a fair market value of $400.00 or less. Larceny of goods with a value of more than 400 dollars is a felony while larceny of goods where the value is 400 dollars or less is a misdemeanor. G.S. 14-72(a). The term "value" in this section means fair market value and not the replacement cost of the goods. *State v. Morris*, 318 N.C. 643, 645, 350 S.E.2d 91, 93 (1986). The appropriate measure of value is "the price which the subject of the larceny would bring in the open market — its 'market value' or its 'reasonable selling price' at the time and place of the theft, and in the condition in which it was when the thief commenced the acts culminating in the larceny. . . ." *State v. Dees*, 14 N.C. App. 110, 112, 187 S.E.2d 433, 435 (1972).

In the present case, the subject property included a miter box, two circular saws, a jigsaw, two portable drills, battery drills, a half-inch reversible drill, and a large hammer drill. At trial, the owner of these tools was asked to express his opinion as to the fair market value of each of the stolen items. The following exchange occurred:

Q. When you came back to your vehicle and after you talked to Ms. McManimen, what things did you observe at that time that were missing from the vehicle that had been there when you parked it?

A. Well, the first thing I noticed was my miter box.

Q. Would you tell us what the fair market value of that particular instrument was at that time and in that condition?

A. I'd say about Two Fifty, something like that, for sure.

Q. Two Hundred and Fifty Dollars?

A. Yes.

Q. What else did you notice at that point in time that was missing from the vehicle from the time you parked it until you came back?

A. Well, I noticed my circular saw was gone, regular saw. Run about a Hundred and Sixty dollars.

Q. Fair market value would be about a Hundred and Sixty Dollars?

A. Well, that's wht [sic] it would cost to buy them.

Mr. Towler:—OBJECTION and I MOVE TO STRIKE that.

A. I don't know—

THE COURT:—well, SUSTAINED. Members of the Jury, you're not to consider that. He asked you what the fair market value was at the time in its condition, if you have an opinion.

A. In the condition it was in? I don't really know. I don't have no opinion, because I don't know. I don't know. . . .

Q. I want to go back to the items that you noticed initially. The jigsaw, could you give us a fair market value on that particular item at that time?

A. No, I cannot. I don't know—I just know what I paid for 'em. I don't know what the market value is if I tried to sell 'em. Never tried to sell no tools.

Q. Do you have any idea of the fair market value of the two circular saws?

A. No, I don't.

Q. All of these items that you listed, did they have some value, were they usable in the construction trade?

A. Right. That's what I used them for.

Q. But you have no idea of the individual fair market value.

STATE v. HAIRE

[96 N.C. App. 209 (1989)]

A. I'm—no, sir. I'm a layperson as far as selling tools. It's hard for me to get the tools; so, I never try to sell no tools. I try to keep all I can get.

Shortly after hearing this testimony, the court called a brief recess in which the witness conversed with the prosecutor. After the recess the witness returned to the stand and was prepared to testify as to the fair market value of the tools. Defense counsel objected, and the court questioned the witness as to the basis of his conversation with the prosecutor:

THE COURT:—During the break what conversation did you have with Mr. Driver or with anybody concerning the fair market value?

A. I just asked him, I told him I didn't know what that was, what does he mean by that?

THE COURT:—Did he explain what he meant by it?

A. Yeah. He just said, just whatever you thought that they were worth in the condition that they're in, and what somebody would pay for 'em, what you would pay for 'em, this type of thing. It works hand in hand. I said well, I know how much I paid for them, and I know—

THE COURT:—do you understand that fair market value is what a person who is willing to buy, or desires to buy, though is not compelled to do so, would sell it for, or what somebody would pay for it.

A. Now, just like this is where we get screwed up, 'cause if you say it like that, I don't know what you're talking about. The only thing I know is, if a person in business, been in business like I am, and they are another contractor, I would know just about what they would pay for it, you know.

THE COURT:—If they were wanting to buy the tools?

A. Right.

THE COURT:—But did not have to buy them from you.

A. Oh, right. Right. Yeah.

THE COURT:—And if you were willing to sell the tools, but didn't have to sell them.

STATE v. HAIRE

[96 N.C. App. 209 (1989)]

A. Right, right.

THE COURT:—Is that what you're saying?

A. Right, yeah. Nobody had to.

THE COURT:—The objection is OVERRULED. Bring the Jury back, please, sir.

Back before the jury, the witness testified that he had been in the contracting area for about 21 years, that he had purchased all his tools himself, that he was familiar with some of the prices paid for used tools, and that he had opinions on the fair market value of the tools. He then proceeded to testify as to his opinion as to the fair market value of each of the tools individually; the aggregate value was between $885 and $1,030.

On cross-examination he stated that he was familiar with new tool prices and the prices of rebuilt tools from shops as well as what other people talk about paying for tools. When defense counsel suggested that the basis for his testimony was really the purchase price or replacement cost of the stolen items, the witness replied, "No, it cost more than that to replace 'em. Cost way more than that to replace 'em. That's why I didn't understand what the fair market value meant. Can't buy another car, you know, in 1989 for what you paid in 1987. Still need a car." The defendant argues that this testimony is "equivocal and susceptible of diverse inferences," citing State v. Jones, 275 N.C. 432, 438, 168 S.E.2d 380, 384 (1969). We disagree. Once the State explained to the witness what the term "fair market value" meant, he was able to give testimony as to the value of the tools at the time they were stolen. The questions from the bench expeditiously clarified the basis and meaning of the witness' testimony. He confirmed his understanding when he was further questioned on redirect examination about a tool in which he had expressed his opinion as to its fair market value before that term was explained to him:

Q. Previously, when I asked you about the miter box, before you testified that you understood the concept of fair market value, you said Two Hundred and Fifty on the miter box? Now, with additional understanding, do you have an opinion as to the fair market value of that particular item?

A. I'd say in the condition, about a Hundred Seventy-Five to Two Hundred Dollars.

Based upon this exchange it is clear that the witness' testimony as to the fair market value was not "equivocal" once he understood the meaning of the term.

We distinguish *State v. Morris*, 318 N.C. 643, 350 S.E.2d 91 (1986), relied upon in defendant's brief. In that case, the owner of the property testified that the approximate value of the edger and mower taken was $500.00. On cross-examination it was revealed that this figure represented the replacement cost of the items. The Supreme Court held that the jury could have inferred from the evidence that the fair market value of the tools was less than the replacement cost testified to and that it was less than $400.00. Holding it was error under these circumstances for the trial court to refuse to instruct on misdemeanor larceny, the court reversed and remanded for a new trial. Here, by contrast, the witness did not testify as to the replacement cost of the stolen tools. In fact, he denied that that was the basis of his valuation. When asked on cross-examination if he was really stating how much it would cost to replace the tools, he replied, "No, it cost more than that to replace 'em. Cost way more than that to replace 'em." We find that once the witness understood the meaning of the term he was able to give clear, cogent testimony as to the "fair market value" of his tools at the time they were taken.

Defendant also contends that his motion to dismiss the charge of felonious larceny should have been granted because the owner's testimony regarding the value of the stolen tools was not credible. Allowing the State every reasonable inference to be drawn from the evidence, *State v. Johnson*, 310 N.C. 574, 577, 313 S.E.2d 560, 563 (1984), we find that the trial court did not err in denying the defendant's motion. The total fair market value of the stolen tools was over twice the statutory monetary threshold for felonious larceny. The evidence was sufficient to go to the jury and accordingly we find

No error.

Judges PHILLIPS and COZORT concur.